UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

HENRY CARL JOHNSON, JR.,

        Petitioner,

v.

MELINDA BRAMAN,

        Respondent.
_____/

Case No. 1:17-cv-783

Honorable Janet T. Neff

### REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Henry Carl Johnson, Jr. is incarcerated with the Michigan Department of Corrections at the Parnall Correctional Facility (SMT) in Jackson, Jackson County, Michigan. Petitioner pleaded guilty in the Kent County Circuit Court to possession with intent to deliver less than 50 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv), possession with intent to deliver less than 50 grams of heroin, Mich. Comp. Laws § 333.7401(2)(a)(iv), and to being a fourth-offense felony offender, Mich. Comp. Laws § 769.12. On June 20, 2013, the court sentenced Petitioner to two prison terms of 6 to 20 years.

On August 21, 2017, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on August 21, 2017. (Pet., ECF No. 1, PageID.14.)

The petition raises four grounds for relief, as follows:

    I.    Petitioner Johnson is entitled to resentencing where the sentencing guidelines were misscored in violation of state and federal due process right[s], U.S. Const. Am. V & XIV.

    II.    Ineffective assistance of trial counsel, U.S. Const., Am. VI, XIV; Mich. Const. 1963, art 1 § 20.

    III.    Petitioner Johnson['s] sentence is unreasonable because he has the right to be sentenced using accurate information. U.S. Const. Am. V & XIV; Mich. Const. 1963, art. 1 § 17.

    IV.    Ineffective assistance of [appellate] counsel, U.S. Const. Am. VI, XIV; Mich. Const. 1963, art 1 § 20.

(Pet., ECF No.1, PageID.6-7, 9-10.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are noncognizable, procedurally defaulted, or without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are either noncognizable or without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

    I.    <u>Factual allegations</u>

Shortly before the Grand Rapids Police Department executed a search warrant at 3247 E. Fulton in Grand Rapids Township, Michigan, Petitioner was seen driving away from the address.  Police officers pulled him over in a traffic stop, after which he was placed in custody and found to have 5 grams of cocaine in his possession, together with two cell phones and $543.00 in cash.  The police took Plaintiff back to the address while they conducted the search.  They found what they determined to be 55 grams of cocaine with packaging, 41 grams of heroin, and .69 pounds of marijuana, together with a .380 caliber semiautomatic pistol, and $1,130.00 in currency. (Br. in Supp. of Pet., ECF No. 2, PageID.22.)

Petitioner was charged with ten counts:  (1) possession with intent to deliver 50 to 449 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iii); (2) possession with intent to

deliver 50 to 449 grams of heroin, Mich. Comp. Laws § 333.7401(2)(a)(iii); (3) possession with intent to deliver less than 50 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv); (4) possession with intent to deliver less than 50 grams of heroin, Mich. Comp. Laws § 333.7401(2)(a)(iv); (5) felon in possession of a firearm, Mich. Comp. Laws § 750.224f; (6) possession with intent to deliver less than 5 kilos of marijuana, Mich. Comp. Laws § 333.7401(2)(d)(iii); (7) maintaining a drug house, Mich. Comp. Laws § 333.7405(d); (8) conviction of a second or subsequent drug offense under the chapter, Mich. Comp. Laws § 333.7413(2); (9) a second count of possession with intent to deliver less than 50 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv); and (10) being a fourth-offense habitual offender, Mich. Comp. Laws § 769.12.  (*Id.*; Register of Action, ECF No. 9-1, PageID.176-177.)

On March 11, 2013, in exchange for his guilty plea to one count of possession with intent to deliver less than 50 grams of cocaine and one count of possession with intent to deliver less than 50 grams of heroin, and to being a fourth-offense habitual offender, the prosecutor dismissed the other charges, agreed to recommend a minimum sentence within a guideline range of between 10 and 46 months, and agreed not to refer the case to the United States Attorney's office for further investigation and possible federal charges.  (Plea Tr., ECF No. 9-2, PageID.185; Register of Action, ECF No. 9-1, PageID.179.)

Petitioner was scheduled to be sentenced on May 2, 2013, but he absconded and failed to appear.  A bench warrant was issued, and Petitioner subsequently was rearrested. Petitioner's sentencing hearing was held on June 20, 2013.  At sentencing, Petitioner's actual minimum guidelines range was calculated at between 19 and 76 months.  The trial court advised Petitioner that, while it originally had intended to follow the agreement and to sentence Petitioner within the 10 to 46-month range, Petitioner's failure to appear vitiated the sentencing agreement

under Michigan law. The court therefore sentenced Petitioner near the high end of the new minimum guidelines range to a sentence of 6 to 50 years. (Sentencing Tr., ECF No. 9-3, PageID.188-189.)

Petitioner requested the appointment of appellate counsel, and an attorney was appointed on July 19, 2013. On December 18, 2013, appellate counsel moved to withdraw, and the motion was granted that same date. (Register of Action, ECF No. 9-1, PageID.180-181.) On July 13, 2015, Petitioner filed a motion to appoint substitute counsel on appeal. The court granted the motion on July 27, 2015. (*Id.*, PageID.181.) Petitioner, through appellate counsel, filed a motion for resentencing on September 23, 2015. (*Id.*) At a hearing held on December 11, 2015, the court denied the motion, indicating that the sentence was reasonable and would have been imposed, regardless of any change to the guidelines. (Hr'g on Mot. for Resentencing, ECF No. 9-4, PageID.190.)

Petitioner sought leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court, raising a single issue:

>   I.    [Petitioner] is entitled to resentencing where the sentencing guidelines were misscored in violation of the state and federal due process right to sentencing based upon accurate information and trial defense counsel was ineffective for failing to challenge the scoring and because his sentence is unreasonable.

(Def.'s Br. on Appeal, ECF No. 9-7, PageID.263.) Those courts denied leave to appeal on December 1, 2015, and May 2, 2016, respectively. (Mich. Ct. App. Order, ECF No. 9-7, PageID.259; Mich. Order, ECF No. 9-8, PageID.285.)

Petitioner filed a motion for relief from judgment on February 10, 2017, raising the following four issues:

>   I.    [Petitioner] is entitled to resentencing where the sentencing guidelines were misscored in violation of the state and federal due process right to sentencing based upon accurate information, U.S. Const Am V & XIV.

    II.     Ineffective assistance of trial counsel, U.S. Const; Am (6th) VI, XIV, const 1963, art 1, sec. 20.

    III.     [Petitioner's] sentence is unreasonable because he has the right to be sentenced using accurate information, U.S. Const Am V & XIV; const 1963, art 1 § 17[.]

    IV.     Ineffective assistance of appella[te] counsel, U.S. Const; Am (6th) VI, XIV, Const 1963, art 1, sec. 20[.]

(Mot. for Relief from J., ECF No. 9-5, PageID.193.) In an opinion and order issued on April 4, 2017, the trial court denied the motion. (Cir. Ct. Op. & Order, ECF No. 9-6, PageID.254-257.) Petitioner did not seek leave to appeal to the Michigan Court of Appeals.

    II.     <u>AEDPA standard</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. \_\_, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not

5

consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings

of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Grounds I & III: Improper Sentence

In Ground I of his habeas application, Petitioner argues that the sentencing court misscored Prior Record Variable (PRV) 4, Mich. Comp. Laws § 777.54 (accounting for prior low severity juvenile adjudications), and PRV 5, Mich. Comp. Laws § 777.55 (accounting for prior misdemeanor convictions or prior misdemeanor juvenile adjudications). Petitioner contends that the misscoring resulted in a higher minimum guidelines range than warranted and higher than Petitioner expected at the time he pleaded guilty. Petitioner argues that the variables were scored based on inaccurate information and based on facts not admitted by Petitioner or found by the jury, in violation of the Sixth and Fourteenth Amendments and the Michigan constitution. In Ground III, Petitioner essentially reargues that his sentence was based on inaccurate information, which, he alleges, resulted in an unreasonable sentence.

#### A. Violation of Sixth Amendment

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 US 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

*Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial factfinding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303). A year later, in *Booker*, 543 U.S. 220, the Supreme Court applied the *Blakely* reasoning to the federal sentencing guidelines to conclude that the federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment.

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, No. 16-2067, 2018 WL 4039838 (6th Cir. Aug. 24, 2018). The *Robinson*

court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 2018 WL 4039838, at **5-6 (Aug. 24, 2018). The court reasoned that, "[]at bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences. *Id.* at *5 (citing *Alleyne*, 570 U.S. at 111-12).

In the instant case, Petitioner was sentenced on June 20, 2013, three days after the Supreme Court decided *Alleyne*. *Alleyne* therefore was clearly established at the time of Petitioner's sentence.

Application of *Alleyne*, however, does not alter the result in the instant case. Petitioner's only complaints about judicial factfinding have to do with the trial court's findings of Petitioner's past juvenile adjudications in relation to PRV 4 and PRV 5. By the express terms of *Apprendi* and its progeny, the Sixth Amendment is implicated only by judicial findings of fact "[o]ther than the fact of a prior conviction . . . ." *Apprendi*, 530 U.S. at 490. The judicial factfinding at issue here involved findings about juvenile adjudications, the equivalent of convictions. The judicial findings at issue here therefore do not implicate the Sixth Amendment.

Moreover, the Supreme Court has recognized that not every case in which the defendant was sentenced under mandatory guidelines needs to be remanded for resentencing. Instead, as the Court indicated in *Booker*, 543 U.S. at 268, determining whether resentencing is warranted may depend, among other things, "upon application of the harmless-error doctrine." *Id.* Here, the mandatory nature of the sentencing guidelines at the time of Petitioner's sentence was harmless. The circuit court expressly held that it would have imposed the same sentence, even if the guidelines range was lower. As the courts have recognized, purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the

9

Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481-82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)). Because the trial court held that it would have imposed the same sentence regardless of the guidelines, Petitioner cannot demonstrate that he was prejudiced by the mandatory nature of the guidelines at the time he was sentenced.

### B. Guidelines Scoring Error & Due Process

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich.

1987). Therefore, to the extent that Petitioner challenges the scoring of the guidelines, his claim is not cognizable in this proceeding.

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also Tucker,* 404 U.S. at 447; *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner argues that the facts before the sentencing court were false and that the sentence was based on false information. He contends that PRV 4, which allows the scoring of 0 to 20 points for prior misdemeanor juvenile and adult adjudications, should not have been scored at 5 points for two prior misdemeanor juvenile adjudications. Petitioner claims that his prior juvenile offenses were ultimately dismissed by the juvenile court. He asserts that the prosecutor

11

admitted as much in his brief in response to Petitioner's motion for resentencing. In the document Petitioner references, however, the prosecutor indicated that Petitioner actually had three, not two, misdemeanor adjudications in which Petitioner entered a guilty plea: a 1994 plea to carrying a concealed weapon (CCW) and a 1995 guilty plea to two offenses (receiving and concealing (R&C) and delivery of marijuana). Petitioner relies on the prosecutor's first footnote, which states:

> After this response had been drafted, the undersigned received information from the juvenile division support staff that their records indicate a proven adjudication for a CCW Non-Pistol in 1994 (the trespassing is not listed in the short form summary report, but might have been a second count on the same case). However, the 1995 R&C under $100 and the 1995 Narcotics Delivery have a designation of "DJU," which typically means dismissed by judge. As this information is from the Prosecutor's Office's old computer system, it is unclear exactly what this information means in this context as sometimes a case dismissed was actually a plea to a lesser offense, or maybe an outright dismissal. The People ask that this Court, if possible, take judicial notice of its own files for the purposes of providing a better answer on this issue. Assuming the trespassing and CCW are still valid, Defendant would be at 77 points instead of 85, but still Level F.

(Ex. A to Mot. for Relief (People's Response to Def.'s Mot. to Withdraw Plea or for Resentencing), ECF No. 9-5, PageID.219.) Petitioner suggests that, because the trial court, in denying Petitioner's motion for resentencing, expressly adopted the argument of the prosecutor, the court erred by not accepting as truth that the charges were dismissed.

Petitioner's argument was squarely rejected by the trial court and upheld on appeal. Despite Petitioner's contrived argument, the prosecutor did not admit that PRV 4 was misscored. Instead, the prosecutor argued that Petitioner was properly scored on the CCW and trespass convictions and that, even if the R&C and marijuana convictions were not properly considered prior adjudications under the variable, his score would still be 77, qualifying Petitioner at Level F in the PRV grid. Moreover, Petitioner attached to his motion and to his petition in this Court a copy of the juvenile petition, which indicates that Petitioner pleaded guilty to both CCW and trespassing. (Attach. to Br. in Supp. of Pet., ECF No. 2-3, PageID.56; Attach. to Mot. for

Resentencing, ECF No. 9-5, PageID.224.)  Petitioner therefore fails to demonstrate that the information before the court was materially false.

Further, even if the information in the PSIR was false, Petitioner cannot show that the court relied on the false information in imposing the sentence.  The court did not sentence Petitioner at the bottom of the guidelines as calculated using the juvenile offenses.  If it had, Petitioner would have received a minimum sentence of 19 months.  Instead, the court imposed a minimum sentence of 6 years, expressly indicating that it believed that a sentence near the top of the range was warranted. (Sentencing Tr., ECF No. 9-3, PageID.189.)  At the hearing on Plaintiff's motion for resentencing, the trial court held that it "believe[d] that this was a reasonable sentence and [it] would impose the same sentence again if [petitioner] was back with different Guidelines or not."  (Mot. for Resentencing Hr'g Tr., ECF No. 9-4, PageID.191; *see also* Ord. Den. Mot. for Relief from J., ECF No. 9-6, PageID.257 (quoting from hearing on motion for resentencing and reiterating that it would have imposed the same sentence).)

Under these circumstances, no basis exists for concluding that the trial court relied on materially false information to set its sentence.  The state courts' rejection of his claim therefore constituted an entirely reasonable application of established Supreme Court precedent.

IV.    Ground II:  Ineffective Assistance of Trial Counsel

In Ground II of his petition, Petitioner argues that his trial attorney was ineffective in failing to object to the scoring of PRV 4 and PRV 5.  He also argues that trial counsel was ineffective in failing to advise Petitioner prior to the time of his plea that the lab report prepared by the Michigan State Police showed that Petitioner possessed only 37.49 grams of cocaine, 14.88 grams of heroin, and 229 grams of marijuana.  Petitioner argues that he never would have accepted the plea had counsel had informed him of the results of the lab report.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of

prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### A.   Failure to Object to Scoring of PRV 4 and PRV 5

Petitioner contends that his attorney was ineffective in failing to object to the scoring of PRV 4 and PRV 5.

As the Court previously discussed, the scoring of PRV 4 and PRV 5 did not violate either the Sixth Amendment or the Due Process Clause. Moreover, to the extent that Petitioner argues that the variables were incorrectly scored under Michigan law, the state courts squarely rejected his claims. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (holding "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)). *See also Thomas v. Stephenson*, No. 16-2301, slip op. at 8 n.1 (6th Cir. Aug. 6, 2018) (same). As a result, any objection to the scoring of the variables, whether under state or federal law, would have been futile. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

### B.   Failure to Advise of Lab Reports

Petitioner argues that his trial attorney rendered ineffective assistance of counsel when he failed to advise Petitioner prior to sentencing of the results of the lab reports, which proved delivery of less than 50 grams of each cocaine and heroin. Petitioner contends that he would not

have pleaded guilty to delivery of less than 50 grams had he been aware that the state could not prove more than 50 grams.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Despite Petitioner's self-serving statement that he would not have pleaded guilty had he seen the lab report, the results of the lab report do not reasonably support Petitioner's claim. The lab report indicates that only a small fraction of the evidence received by the lab was tested prior to the guilty plea. (*See* Ex. I to Pet., ECF No. 2-9, PageID.82-83.) The same lab report recorded receipt of similar baggies containing white or off-white powder and weighing approximately 22 grams were not analyzed, though they likely would have been analyzed had Petitioner elected to go to trial. In addition, Petitioner's argument ignores the fact that he had personal knowledge about what was taken from him independently of the lab report. Further, no reasonable person reviewing the lab report would have concluded that the state would be unable to prove that Petitioner possessed more than 50 grams of cocaine, as charged in the information. Finally, Petitioner obtained the dismissal of seven of the ten charges raised against him, including dismissal of a second-offense drug supplement, Mich. Comp. Laws § 333.7413(2), which would have subjected Petitioner to a mandatory minimum sentence of five years. Without the drug

supplement, counsel was able to bargain for an agreement to sentence Petitioner within the guidelines range of 10 and 46 months. And Petitioner would have received the benefit of that agreement had he not failed to appear for his sentencing.

Under these circumstances, Petitioner fails to demonstrate any reasonable probability that he would not have pleaded guilty had he seen the lab report. He therefore fails to demonstrate prejudice under *Hill*, 474 U.S. at 59. Because Petitioner has not shown prejudice, the Court therefore need not address the performance prong of *Strickland*. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) ("When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'") (quoting *Strickland*, 466 U.S. at 697).

V.   Ineffective Assistance of Appellate Counsel

In his fourth ground for habeas relief, Petitioner argues that his appellate attorney was ineffective when she moved for resentencing at the same time she filed an application for leave to appeal. Petitioner contends that the motion should have been filed first, as provided in Mich. Comp. Laws § 769.34(10) (which bars a challenge to the sentencing guidelines unless the issue has been raised at the sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals) and Mich. Ct. R. 6.429(c) (same). Petitioner argues that he was prejudiced by the timing of the motion, because the trial court did not hear and decide the motion until ten days after the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. He contends therefore that he did not receive a full and fair hearing on his claim.

After reciting the *Strickland* standard, the trial court rejected Petitioner's claim, as follows:

> Here, Defendant argues that Appellate Counsel was ineffective for failing to follow MCR 6.429(c) and MCL 769.34(10) when she did not allow the lower court to decide the motion for resentencing before filing Defendant's application for leave to appeal.
>
> MCR 6.429(C) states:
>
> A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.
>
> Defendant alleges that the Michigan Court of Appeals never properly reviewed his case because the issue was not exhausted at the time of review. According to MCR 6.429(C), and the related sentencing statutes, a challenge to the guideline sentence must be raised at sentencing or in a proper motion for resentencing before it may be raised on appeal.
>
> Defendant's trial counsel raised a successful challenge to the calculation of OV 15 at the time of sentencing. After sentencing, Defendant's appellate counsel filed an Application for Leave to Appeal and a Motion for Resentencing, which challenged the scoring of PRV 4 and PRV 5. At the motion hearing, this Court stated, "I believe this was a reasonable sentence and I would impose the same sentence again if he was back with different guidelines or not." The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented."
>
> Defendant's claim that the Court of Appeals denied his Application for Leave to Appeal because he did not properly raise the issue in the trial court has no basis. Defendant has not established that his Appellate Counsel deviated from an objective standard of reasonableness or that the result of his application would have been different. Defendant's appellate counsel was not ineffective and therefore does not establish good case for failure to bring this claim. Additionally, Defendant has failed to show that actual prejudice occurred, in fact, this Court specifically stated that the sentence was appropriate regardless of the guidelines.

(Apr. 4, 2017, Cir. Ct. Ord., ECF no. 9-6, PageID.256-257 (footnoted citations omitted).) In other words, the circuit court held that Petitioner could not demonstrate either the performance or the prejudice prong of *Strickland*.

The trial court's determination amounted to an entirely reasonable application of the *Strickland* standard, because Petitioner cannot show prejudice. First, the Michigan Court of Appeals rejected his claim concerning the scoring of the variables on the merits, not because Petitioner had failed to properly move in the trial court. As a result, Petitioner cannot show that the attorney's procedural error affected the review applied by the court of appeals. Second, regardless of whether counsel could have or should have waited to file the application for leave to appeal to the Michigan Court of Appeals, Petitioner cannot demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 at 694. Where, as here, the trial court held that it would have imposed the same sentence under lower guidelines, any further challenges to the PRVs would have had no impact on the judgment. Petitioner's claim that appellate counsel was ineffective therefore is meritless.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:   October 17, 2018                                  /s/ Ellen S. Carmody
                                                           Ellen S. Carmody
                                                           United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).